401 A.2d 353

**COMMONWEALTH of Pennsylvania**

v.

**Glenn A. TATE, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 5, 1979.

Decided May 1, 1979.

John H. Corbett, Jr., Asst. Public Defender, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Asst. Dist. Attys., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

On November 1, 1977, following a jury trial, appellant was found guilty of murder of the second degree (felony murder), robbery and criminal conspiracy. After post-verdict motions were denied, appellant was sentenced to life imprisonment for the murder conviction. Sentence was suspended on the robbery and criminal conspiracy convictions. This appeal follows wherein appellant raises three contentions, all of which are without merit.

Appellant's first contention is that there was insufficient evidence to support his criminal conspiracy conviction.

To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence. *Commonwealth v. Yost,* 478 Pa. 327, 386 A.2d 956 (1978).

Viewed under this standard, the evidence presented at trial established the following facts: On the evening of February 13, 1977, Kevin Stanley, Eugene (Bud) Nixon, and appellant left the home of Nixon's sister located in the

Northside. The three men had agreed to "rob something" and then "split the proceeds". After cruising the Northside and finding no target of opportunity, the three men drove to Duquesne, Pennsylvania. The Avenue News Store in Duquesne, Pennsylvania, was suggested by Stanley as a target and the threesome agreed to rob that store. Stanley and appellant waited in the parked car while Nixon took a gun from the glove compartment and headed toward the store. Nixon found the Avenue News Store was closed. On his way back to the car, Nixon accosted the victim, Richard Calkusic, in an alley behind the store and decided to rob him. The victim struggled and was shot and killed by Nixon. Nixon returned to the car, explained what had happened and the threesome drove back to the Northside.

The Commonwealth has the burden of proving, by direct or circumstantial evidence, the existence of shared criminal intent, for, the essence of a conspiracy is an agreement to commit an unlawful act.[1] *Commonwealth v. Wilson,* 449 Pa. 235, 238, 296 A.2d 719, 721 (1972). "[W]hile more than mere association must be shown, '[a] conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of coconspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed . . . .'" *Commonwealth v. Roux,* 465 Pa. 482, 488, 350 A.2d 867, 870 (1976).

The evidence established beyond a reasonable doubt that an agreement to accomplish a criminal objective,

1. 18 Pa.C.S.A. § 903(a) provides:
    (a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
    (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
    (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

namely, to commit a robbery, had been reached by the threesome. Appellant's presence in the car, his agreement to rob something, his agreement to split the proceeds and his continued association with Stanley and Nixon throughout the incident up to and including the ride back to the Northside was sufficient evidence to justify the jury's verdict that appellant was a partner in the conspiracy to commit a robbery.[2]

Appellant's second contention is that there was insufficient evidence to support his felony murder and robbery convictions. These convictions were based upon appellant's criminal responsibility, as a member of the conspiracy, for acts done in furtherance of the conspiracy. Appellant argues that assuming the conspiracy did exist, the conspiracy terminated when co-conspirator Nixon found that the Avenue News Store was closed, and, therefore, the subsequent criminal acts (murder and robbery of the victim) were "independent, impulsive, random" acts beyond the scope of the conspiracy. This contention is without merit.

Section 903(g)(1) of the Pennsylvania Crimes Code provides:

Conspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired.

The criminal object of the aforementioned conspiracy was to commit a robbery. When Nixon shifted the target for accomplishing that objective from the Avenue News Store to the victim, the essence of the conspiracy—the agreement to commit a robbery—remained unaffected. Nixon's rob-

---

2. Additionally, appellant argues that the evidence was insufficient on the grounds that much of the evidence was based on the testimony of a co-conspirator (Kevin Stanley) who was testifying pursuant to a plea bargain. This argument is without merit; the issue is one of credibility for the jury. *See, Commonwealth v. Coades*, 454 Pa. 448, 311 A.2d 896 (1973).

bery of the victim was within the scope of the conspiracy. Therefore, as a co-conspirator, appellant became criminally responsible for the commission of the robbery, and, for all natural and probable consequences occurring during the commission of that felony, namely, the murder of the victim. *Commonwealth v. Williams*, 443 Pa. 85, 277 A.2d 781 (1971). Hence, the appellant's contention that there is no link between him and the robbery-murder is without merit.

█ Appellant's final contention is that the trial court committed prejudicial error by overruling defense counsel's objections to testimony given by the Commonwealth's principal witness, Kevin Stanley, alleging that appellant uses "dope."

The reference, which was unsolicited, occurred during direct examination in the following manner:

BY THE COMMONWEALTH:

Q Was there an agreement to that effect? Was there an agreement between the three of you to split the proceeds?

A Yes. See, I don't use dope. Right.

Q All right.

A But Bud and Tate do, and what they're going to do—

MR. LALAMA: Objection.

THE COURT: Overruled. Go ahead.

A What they was—they was going to do with that, that was their business. I don't know what they were going to do with their money.

Immediately preceding this colloquy, the trial judge issued the following cautionary instructions in response to an objection to a similar reference to "dope":

We're not concerned with, members of the jury, any other plan or problems but only with the matter here under inquiry; namely, that alleged murder of this individual, and the other violations of which reference—or to which reference has already been made.

We're not concerned with any dope buying problems. Go ahead.

We recognize that "the prosecution may not introduce evidence of [appellant's] prior criminal conduct as substantive evidence of his guilt of the present charge." *Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). However, as this Court stated in *Commonwealth v. Williams,* 470 Pa. 172, 178, 368 A.2d 249, 252 (1977):

> [W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy. Our decisions have indicated that there are situations where the taint resulting from an improper reference to an unrelated criminal act, may be expunged without resort to the extreme remedy of aborting an otherwise fair trial.

We find that any taint resulting from this single unsolicited reference to "dope" was so attenuated that the cautionary instructions which preceded the statement were sufficient to expunge any prejudicial effect which this statement may have had on the collective mind of the jury.

Judgments of sentence affirmed.

ROBERTS, J., concurs in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. As the majority opinion points out, the conspiracy was to "rob something"—but not the victim involved in this case. The testimony also shows that appellant agreed only to rob the Avenue News Store. The conspiracy ended when Nixon found the store closed. Appellant did not agree to any further acts perpetrated by Nixon. The murder was beyond the scope of the conspiracy as was indeed, "independent, impulsive, random." The evidence is insufficient to support the verdict.