449 A.2d 47

**COMMONWEALTH of Pennsylvania**

v.

**Steven Paul PLUSQUELLIC, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 2, 1981.

Filed Aug. 6, 1982.

Petition for Allowance of Appeal
Denied Nov. 30, 1982.

1

2

Leonard I. Sharon, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and BECK, JJ.

WIEAND, Judge:

Steven Paul Plusquellic was tried without jury and convicted of violating the Controlled Substance, Drug, Device and Cosmetic Act,[1] criminal conspiracy,[2] and carrying a firearm without a license.[3] Plusquellic's post trial motions were denied, and he was sentenced to imprisonment for a

1. Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended, 35 P.S. §§ 780–113(a)(16); 780–113(a)(30).

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. § 6106.

4

period of not less than nine (9) nor more than eighteen (18) months. On direct appeal, he contends (1) that the evidence was insufficient to convict him of conspiracy or of violating the Drug Act, either as a principal actor or as an accomplice; (2) that the statements of an alleged co-conspirator constituted inadmissible hearsay and should not have been received; and (3) that the trial court erred in refusing to suppress physical evidence seized from his person and the truck in which he was seated. These claims lack merit; and the judgment of sentence, therefore, will be affirmed.

The test to be applied in determining the sufficiency of the evidence is whether, accepting as true all of the evidence and all reasonable inferences arising therefrom upon which, if believed, the trier of fact could properly have based its verdict, it is sufficient to prove beyond a reasonable doubt that the accused is guilty of the crime or crimes with which he has been charged. As with all challenges to the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict winner, in this case the Commonwealth, which is entitled to the benefit of all favorable inferences arising therefrom. *Commonwealth v. Waller*, 498 Pa. 33, 44, 444 A.2d 653, 658 (1982); *Commonwealth v. Bellis*, 497 Pa. 323, 330 n.9, 440 A.2d 1179, 1182 n.9 (1981); *Commonwealth v. Payne*, 299 Pa.Super. 378, 380, 445 A.2d 804, 805 (1982); *Commonwealth v. Johnson*, 273 Pa.Super. 14, 17, 416 A.2d 1065, 1067 (1979). Moreover, the entire trial record must be evaluated, and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct. *Commonwealth v. Waldman*, 484 Pa. 217, 222–23, 398 A.2d 1022, 1025 (1979); *Commonwealth v. Tabb*, 417 Pa. 13, 16, 207 A.2d 884, 886 (1965); *Commonwealth v. Bentley*, 276 Pa.Super. 41, 44, 419 A.2d 85, 86 (1980); *Commonwealth v. Williams*, 273 Pa.Super. 578, 582, 417 A.2d 1200, 1201 (1980).

Conspiracy is defined in Section 903(a) of the Pennsylvania Crimes Code, 18 Pa.C.S. § 903(a) as follows:

§ 903. Criminal Conspiracy

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime;

or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

■ The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. *Commonwealth v. Carter*, 272 Pa.Super. 411, 414, 416 A.2d 523, 524 (1979); *Commonwealth v. Anderson*, 265 Pa.Super. 494, 500, 402 A.2d 546, 549 (1979); *Commonwealth v. Henderson*, 249 Pa.Super. 472, 483, 378 A.2d 393, 398 (1977). "The crime by its very nature is frequently not susceptible of proof except by circumstantial evidence. 'A conspiracy may be inferentially established by showing the relationship, conduct or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed.' *Commonwealth v. Horvath*, 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958)." *Commonwealth v. Carter, supra* (citations omitted). In *Commonwealth v. Anderson, supra*, the court, per Hoffman, J., listed circumstances relevant, though by themselves insufficient, to establish a corrupt confederation as follows: (1) association between alleged conspirators; (2) knowledge of the commission of a crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy.

■ When a conspiracy to commit a particular crime or crimes has been shown, each conspirator is responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The agreement is the nexus which renders a

6

conspirator vicariously liable for the acts of his associates. *Commonwealth v. Tate*, 485 Pa. 180, 185, 401 A.2d 353, 355 (1979); *Commonwealth v. Cofer*, 257 Pa.Super. 528, 531–32, 390 A.2d 1363, 1365 (1978); *Commonwealth v. Branch*, 239 Pa.Super. 17, 20, 361 A.2d 435, 437 (1976). See also: 7 P.L.E. Conspiracy § 27; W. LaFave & A. Scott, Criminal Law § 64 (1972).

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth and drawing proper inferences in favor of the Commonwealth, established that the charges against Plusquellic arose out of a controlled purchase [4] of cocaine arranged by Trooper Ronald J. Ceyba of the Drug Enforcement Office of the Pennsylvania State Police. On September 13, 1979, Ceyba made arrangements with Edwin Anker, Plusquellic's alleged co-conspirator,[5] to purchase one-quarter pound of cocaine. The transaction was to take place later that evening at a designated meeting site in Verona, Allegheny County. Prior to proceeding to the pre-arranged site, Ceyba dispatched a surveillance van equipped with one-way glass windows and containing state police officers and Justice Department agents. The surveillance van parked in a nearby lot so that the officers could observe the drug transaction and provide back-up assistance if required. Additional officers were stationed in a conventional vehicle approximately three blocks away. At the pre-arranged time, Anker arrived on foot and entered Ceyba's vehicle, ostensibly to "check Ceyba out" and also to count his money. Anker suggested that Ceyba accompany him to a nearby home where his cocaine supplier was waiting. Ceyba, of course, preferred that the transaction take place in its entirety at the pre-arranged location. Anker agreed, indicating that he and the supplier would return shortly in a black truck with the drugs. Within five minutes, Anker returned in a black Chevrolet Blazer driven by

4. The operation was described as a "buy-bust"—meaning that the arrests would immediately follow the transaction.

5. Edwin Anker was tried separately on January 30, 1980, and was convicted of violations of the Drug Act and criminal conspiracy.

Plusquellic. The truck stopped behind Ceyba's vehicle, whereupon Anker alighted and re-entered Ceyba's vehicle. Plusquellic, meanwhile, remained at the wheel of the Chevrolet Blazer. Prior to completing the transaction, Anker apparently became suspicious of the surveillance van and directed Ceyba to relocate his vehicle. Plusquellic also moved his truck, entering the parking lot in which the surveillance van was parked and peering into it inquisitively. He eventually stopped and parked immediately behind Ceyba's vehicle. Inside the vehicle, Anker removed two plastic bags containing cocaine from his trousers, weighed them and turned them over to Trooper Ceyba. Thereafter, both Anker and Ceyba emerged from the vehicle, at which time Ceyba signaled the surveillance officers to indicate that the drug transaction had been completed. Upon Ceyba's order, the officers approached the Chevrolet Blazer and placed Plusquellic, who had been attempting to hide a loaded pistol beneath the driver's seat, under arrest.

■ This evidence was sufficient to show that appellant had been consciously involved in an unlawful confederation with Anker. The conclusion is buttressed by Anker's statements to Ceyba which identified appellant as his supplier of cocaine.

Appellant contends, however, that Anker's statements were hearsay and should not have been received as substantive evidence. There is no merit in this contention.

■ It is well established in our law that statements by a co-conspirator are admissible under an exception to the hearsay rule if they are made during the conspiracy and in furtherance thereof. However, there must be evidence other than the statement of the co-conspirator to prove that a conspiracy existed. *Commonwealth v. Dreibelbis,* 493 Pa. 466, 475, 426 A.2d 1111, 1115 (1981); *Commonwealth v. Garcia,* 478 Pa. 406, 421, 387 A.2d 46, 53–54 (1978); *Commonwealth v. Ellsworth,* 409 Pa. 505, 509, 187 A.2d 640, 642 (1963); *Commonwealth v. Hirsch,* 225 Pa.Super. 494, 497, 311 A.2d 679, 681 (1973). See also: P.L.E. Criminal Law

§§ 331–334, 3 Wharton's Criminal Evidence § 642 (13th ed. Torchia 1973). The conspiracy may be established inferentially by showing the relation, conduct or circumstances of the parties. *Commonwealth v. Dreibelbis, supra.* Moreover, the order of proof is within the discretion of the trial court which may, upon only slight evidence of the conspiracy, admit such statements subject to later proof of the conspiracy. P.L.E. Criminal Law § 334. See also: *Commonwealth v. Esposito*, 236 Pa.Super. 127, 130, 344 A.2d 655, 657 (1975).

Appellant contends in the instant case that independent proof of the existence of a conspiracy was lacking. The record belies this argument. The evidence adduced at trial established that, following preliminary negotiations between an undercover drug agent and appellant's alleged co-conspirator for the purchase of nearly $10,000 worth of cocaine, appellant transported his alleged co-conspirator to the site of the proposed transaction, surveyed the surveillance van stationed in a nearby parking lot, and oversaw the entire transaction from his truck parked directly behind the undercover vehicle in which the transaction took place. He also had a firearm in his possession. This was sufficient to establish independently the existence of a conspiracy. The statements by appellant's alleged co-conspirator, made during the conspiracy and in furtherance thereof, were properly received.

Appellant contends finally that the suppression court erred in refusing to suppress a cocaine user's kit and a .380 caliber automatic pistol [6] which had been removed respectively from his person and truck. The seizure of these items was incident to appellant's arrest. The pistol was observed protruding from the space beneath the driver's seat in which

6. Appellant, in his brief, makes the same argument with regard to a holster seized at the same time from the passenger's seat of the Chevrolet Blazer. This claim was not the subject of appellant's post trial motions; it therefore has not been properly preserved for appellate review. See: *Commonwealth v. Nesbitt*, 276 Pa.Super. 1, 4 n.1, 419 A.2d 64, 65 n.1 (1980); *Commonwealth v. Kennerly*, 269 Pa.Super. 404, 408–409, 410 A.2d 319, 321 (1979). Even if we were to consider this issue on its merits, the considerations and conclusions applicable to the seizure of the gun would be determinative.

appellant waited while Anker completed the drug transaction; the cocaine user's kit was found on appellant's person.

 The law is clear that a warrantless seizure is proper if incident to a lawful arrest. See: *Commonwealth v. Holzer*, 480 Pa. 93, 102 n.5, 389 A.2d 101, 106 n.5 (1978); *Commonwealth v. Rivera*, 273 Pa.Super. 105, 107–108, 416 A.2d 1111, 1112 (1979); *Commonwealth v. Harm*, 272 Pa.Super. 431, 436, 416 A.2d 533, 535 (1979); *Commonwealth v. Miller*, 247 Pa.Super. 132, 136, 371 A.2d 1362, 1364 (1977). A warrantless arrest is lawful if the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are such as would warrant a person of reasonable caution to believe an offense has been or is being committed and the person to be arrested is probably the perpetrator. *Commonwealth v. Bartlett*, 486 Pa. 396, 400, 406 A.2d 340, 341 (1979); *Commonwealth v. Stokes*, 480 Pa. 38, 43, 389 A.2d 74, 76 (1978); *Commonwealth v. Gambit*, 274 Pa.Super. 571, 577, 418 A.2d 554, 557 (1980).

In the case *sub judice*, the law enforcement officers present at the scene had probable cause to believe that an illegal drug transaction had taken place and that appellant was a party thereto. Thus, they had a right to make an arrest and conduct a search of appellant's person. If there had been any earlier doubt about the need for such a search, it was removed when a gun was observed on the floor of the truck.

 The seizure of the gun was lawful because it was in plain view. The "plain view" doctrine holds that weapons and contraband within the plain view of a police officer can be seized without a warrant, provided the police officer had a right to be in the place from which he was able to view the item. *Commonwealth v. Bentley*, 276 Pa.Super. 41, 47, 419 A.2d 85, 88 (1980). Because the police had probable cause to make an arrest of appellant while he was seated in the truck, it cannot seriously be argued that they had no right to be where they could observe the gun lying on the floor and protruding from beneath the seat.

Our review of this case discloses no merit in any of appellant's allegations of error. The judgment of sentence, therefore, is affirmed.