469 A.2d 1072

**COMMONWEALTH of Pennsylvania**

v.

**Richard Lee OLDS, Appellant.**

Superior Court of Pennsylvania.

Argued May 24, 1983.

Filed Nov. 25, 1983.

Reargument Denied Feb. 2, 1984.

Petition for Allowance of Appeal Denied July 24, 1984.

445

John A. Halley, Pittsburgh, for appellant.

Kenneth J. Benson, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CAVANAUGH, ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

Appellant Richard Lee Olds was tried before the Honorable Samuel Strauss and a jury in Allegheny County and was convicted of second degree murder, robbery and conspiracy in the shooting death of Thomas Beitler. Post-trial motions were denied and appellant was sentenced to life imprisonment. Several issues are raised in this appeal.

Appellant first contends that the trial court erred in failing to grant a demurrer at the close of the Commonwealth's case. Because appellant's counsel did not rest following the adverse ruling on the demurrer but instead presented a case in defense, a challenge to the correctness of this ruling on appeal can be considered only as a challenge to the sufficiency of the evidence as a whole. *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976). The verdict winner is entitled to the benefit of all reasonable inferences upon which a jury might have relied, and resolution of factual conflicts will not be disturbed on appeal as long as there is support in the record for the verdict. *Commonwealth v. Bachert*, 499 Pa. 398, 453 A.2d 931 (1982), *cert. denied*, 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983).

Reviewed in this light, the record reveals that on the night of October 9, 1979, Claude Bonner, Roderick Todd Allen, and Richard Lee Olds were riding around Pittsburgh, Pennsylvania in Claude Bonner's car. Bonner asked Allen

if he had a pistol and suggested robbing the Fort Wayne Cigar Store, an all-night general store in the vicinity. Allen responded by pointing a pistol at Bonner and saying, "You just get a person coming off down the street."

At some point after this, Olds told Bonner that he was hungry and wanted to get something to eat. Bonner then drove to the Fort Wayne Cigar Store and parked in a side street. Olds got out of the car, followed closely by Allen, who said on his way out, "I'm going to rob the store." Olds's reply to this was "Yeah, right."

The two young men entered the store together and Olds walked to the back to purchase a bag of potato chips. Allen remained standing by the door until Olds reached the register. Allen then made an unintelligible remark to Olds and walked out the door, immediately preceded by Thomas Beitler, the only other customer in the store.

Eric Shaerer, who was alerted by a shot as he was walking toward the Fort Wayne Cigar Store, saw no one other than Allen and Beitler in the vicinity. Beitler was holding his wallet out toward Allen saying, "Here, take my wallet." Allen then fired two more shots, point blank, and Beitler staggered backward into the Fort Wayne Cigar Store, still holding the wallet.

Claude Bonner pulled out to drive away after hearing the first shot, but was prevented from leaving when Olds ran out in front of the car. Olds and Allen then got back into the car. After they were both inside Allen said to Olds, "It was your fault I shot him." Olds denied this and Allen continued, "You was supposed to grab the wallet," to which Olds made no further response. Taking a circuitous route to avoid the police, Bonner then dropped both boys off together near Olds's house.

Olds was convicted under Pennsylvania's felony-murder statute, which defines as second degree murder a criminal homicide which "is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). "Perpetration of a felony"

is further defined in this section as, "The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S. § 2502(d).

Appellant challenges the evidence in two respects. His first assertion is that the record will not support a finding that he possessed the requisite intent to commit robbery. Since there is no evidence that appellant participated directly in either the robbery or the murder, the validity of these convictions depends upon his responsibility for acts done in furtherance of an alleged conspiracy. *See Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979). The existence of such a conspiracy is dependent upon proof of an agreement, or common design, to commit the unlawful act of robbery. *Commonwealth v. Sadusky*, 484 Pa. 388, 399 A.2d 347 (1979); *Commonwealth v. Stasiak*, 305 Pa.Super. 257, 451 A.2d 520 (1982). *See also* 18 Pa.C.S. § 903. Direct proof of an agreement is not required; the conduct of the parties and the circumstances surrounding such conduct may be sufficient to establish an inference of common design. *Commonwealth v. Sadusky, supra; Commonwealth v. Stasiak, supra.*

Appellant relies on *Commonwealth v. Fields*, 460 Pa. 316, 333 A.2d 745 (1975) and *Commonwealth v. Mitchell*, 270 Pa.Super. 146, 411 A.2d 221 (1979) for the proposition that neither mere presence at the scene of a crime nor mere association with a perpetrator is sufficient to infer participation in the crime or in a plan to commit the crime. This is an accurate statement of the law; however, more than mere presence or association has been shown here. A common design to commit the underlying felony of felony-murder may be inferred from the circumstances or acts committed either before or shortly after the slaying. *See Commonwealth v. Bachert, supra.*

Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation

are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred. *Commonwealth v. Carter*, 272 Pa.Super. 411, 416 A.2d 523 (1979).

*Commonwealth v. Lamb*, 309 Pa.Super. 415, 429, 455 A.2d 678, 685–86 (1983). In addition, acts of a co-felon as well as acts of a defendant himself may be considered to establish such an inference. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976). It is especially significant that the three participants arrived at the scene together *and* left together after the crime had been committed. *See Commonwealth v. Carter*, 271 Pa.Super. 492, 414 A.2d 361 (1979). We find, therefore, that the jury in this case was entitled to conclude that appellant was aware of an incipient robbery and performed acts evidencing an agreement to participate therein. *Cf. Commonwealth v. Crow*, 303 Pa. 91, 154 A. 283 (1931). "The least degree of concert or collusion is sufficient to sustain a finding of responsibility as an accomplice." *Commonwealth v. Coccioletti*, 493 Pa. 103, 109, 425 A.2d 387, 390 (1981). Nor is it relevant whether the plan was to rob the store or to rob a pedestrian outside the store. A common purpose of robbery is enough. *Commonwealth v. Tate, supra.*

Appellant's next contention is that, even given the existence of a conspiracy to rob, he cannot be held guilty as an accomplice to felony-murder because the evidence is insufficient to show that the act of Todd Allen in killing Thomas Beitler was performed in furtherance of such a conspiracy.

Under the common law doctrine of felony-murder as applied in Pennsylvania, "the malice necessary to make a killing, even an accidental one, murder, is constructively inferred from the malice incident to the perpetration of the

initial felony." *Commonwealth v. Tarver*, 493 Pa. 320, 328, 426 A.2d 569, 573 (1981), *quoting Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 225, 261 A.2d 550, 553 (1970). In recent years, this doctrine has come under close scrutiny in Pennsylvania as well as in other states, apparently from a sense tht it operates unjustly in certain circumstances. *See generally*, Annot. 13 A.L.R. 4th 1181 (1982). The requirement that the conduct causing death be in further-ance of the design to commit the underlying felony has received particular attention. In *Commonwealth v. Red-line*, 391 Pa. 486, 137 A.2d 472 (1958), the Pennsylvania Supreme Court held that the felony-murder rule would not operate to hold a defendant responsible for the death of a co-felon who was shot by police while attempting to flee from the scene of a crime. The rationale was that such killing was merely coincidental with the felony rather than the result of an act committed in furtherance thereof. In *Commonwealth ex rel. Smith v. Myers, supra,* the same rationale was applied to find that a felon was not respon-sible for the death of an innocent bystander who was killed by an officer in pursuit of the felon. More recently, in *Commonwealth v. Legg*, 491 Pa. 78, 417 A.2d 1152 (1980), it was held that a killing could not be felony-murder where the intent to commit the underlying felony was not formu-lated until after the conduct causing death had occurred. The court reasoned that since there was no involvement in a dangerous felony at the time of the killing, it could not be said that "the actor knew or should have known death might occur from involvement in a dangerous felony." *Id.,* 491 Pa. at 82, 417 A.2d at 1154.

Finally, the case of *Commonwealth v. Waters*, 491 Pa. 85, 418 A.2d 312 (1980), upon which appellant relies, sup-ports the proposition that even where two felons have been acting in concert and are still at the scene of a crime, one felon will not be charged with imputed malice where the homicidal act of his co-felon was not directed toward carry-ing out the particular felony or felonies with which the non-slaying felon is charged.

In the *Waters* case, appellant Gary Waters accompanied Paul Allen to the apartment of Diane Buck and assisted him in breaking down the door. Waters then personally robbed Terry Brennan, who was in the apartment with Buck. Subsequently, Allen shot Brennan. Waters was no longer in the room at the time of the shooting; later, he shot and killed Paul Allen in an attempt to assist Brennan and Buck. The court stated that "these facts could have supported an inference that Allen's act [of shooting Brennan] was completely independent of the felony in that it was wholly unconnected to the felony." *Id.*, 491 Pa. at 95 n. 12, 418 A.2d at 318 n. 12.

The implication of this decision can be better understood by considering the nature of "imputed malice." The malice required for felony-murder is not a specific intent to kill. It is only the wanton disregard for the fact that death might result which is inherent in the commission of a dangerous felony. *Cf. Commonwealth v. Legg, supra.* The felony-murder rule thus holds one responsible for the consequences resulting from the malice which accompanies the perpetration of the initial felony. *See Commonwealth v. Redline, supra; Commonwealth ex rel. Smith v. Myers, supra.* If, in addition to the recklessness or wanton disregard which is imputed to both co-felons, the actual killer also had a specific intent to kill, and the murder flowed from such specific intent rather than from the recklessness, then according to the *Waters* interpretation, the killing did not result from the perpetration of the felony, but was merely collateral to it.

Although the *Waters* court noted that the requirement of "an act by the slayer causing death *which was in furtherance of the felony*," 491 Pa. at 95, 418 A.2d at 317 (emphasis in original) has always existed in Pennsylvania law, this particular interpretation of the requirement had not previously appeared. Early cases dealing with this phrase have considered it primarily in a temporal sense, focusing on whether or not there has been any break in events which would indicate that the underlying felony had been aban-

doned or otherwise terminated before the homicide took place. *See, e.g., Commonwealth v. Zietz,* 364 Pa. 294, 72 A.2d 282 (1950); *Commonwealth v. Kelly,* 333 Pa. 280, 4 A.2d 805 (1939). Perhaps the most coherent statement of prior Pennsylvania law on the subject appeared in *Commonwealth v. Kelly,* 337 Pa. 171, 10 A.2d 431 (1940) (*Kelly II*). In the process of discussing whether or not defendant Kelly could be convicted of felony-murder for shooting a police officer while attempting to avoid arrest for robbery, the court stated:

> There is unity of criminal action between the planning of a crime, its execution or attempted execution and the flight from the scene. There may be between the commission of a robbery and the later commission by the same felon, of a homicide, such disunity in time, place and purpose as to make the two felonies distinct, but we have no such situation here.

*Id.,* 337 Pa. at 175–76, 10 A.2d at 433.

Prior cases involving vicarious liability between co-felons for an ensuing murder have simply not considered the possibility of an independent act of the slayer causing death. *See, e.g., Commonwealth v. Tate, supra; Commonwealth v. Neal,* 447 Pa. 452, 290 A.2d 922 (1972); *Commonwealth v. Williams,* 443 Pa. 85, 277 A.2d 781 (1971); *Commonwealth v. Batley,* 436 Pa. 377, 260 A.2d 793 (1970). However, whether *Waters* is considered to be an extension of existing law or whether it merely focuses on a situation which has not previously arisen, it is distinguishable from appellant's case. Although the shooting in *Waters* occurred *during* the perpetration of a burglary, there was no indication that its purpose was to facilitate the burglary's commission, nor was there any evidence that it occurred during an attempt to flee the scene. By contrast, in appellant's case the trial record will easily support an inference that the victim was shot, if not in the course of an effort to obtain his wallet, at least in the process of escaping the scene of an attempted robbery. This is undisputedly "perpetration of a felony" as defined by 18 Pa.C.S.

§ 2502(d), *supra; see also, Commonwealth v. Williams,* 485 Pa. 137, 401 A.2d 331 (1979).

Unquestionably, a distinction could be drawn between the mental states of the two principal actors in this case; however, to do so would virtually eliminate the doctrine of imputed malice in Pennsylvania. Even a fully retroactive application of the *Waters* decision could not take the defendant this far.

 Appellant argues that his case should at least be remanded so that the jury might have the benefit of a specific instruction that the act of the slayer causing death must have been performed in furtherance of the felony. There is no merit to this argument. Appellant neither offered his own jury instructions nor objected to those given at trial as is required by Pa.R.Crim.P. 1119(b). *See Commonwealth v. Rineer,* 310 Pa.Super. 241, 456 A.2d 591 (1983). The fact that failure to give such an instruction had not been held to be reversible error before the *Waters* decision did not absolve appellant of his responsibility to preserve this objection for review. *See Commonwealth v. Hernandez,* 498 Pa. 405, 446 A.2d 1268 (1982).

Appellant's final argument is that a new trial must be granted because of a communication which took place between the trial court and the jury outside the presence of both counsel. After the jury had retired to deliberate, the foreman returned with the following question for the court:

"If a defendant is found guilty of robbery and conspiracy with an ensuing murder, can a third degree verdict be found or must it be second degree, according to law?"

The court replied:

"You have the duty to reach a verdict based upon the law and the evidence presented in Court. You have the power to bring in any verdict you see fit."

 Appellant does not allege any prejudice resulting from this exchange, nor can we conceive of any way in which the court's reply might have interfered with the jury's function. The mere acknowledgement of a question

from the jury, followed by a direction to continue deliberating, has never constituted reversible error in a criminal case. *See Commonwealth v. Bamber,* 463 Pa. 216, 344 A.2d 799 (1975). Furthermore, the recent decision of the Pennsylvania Supreme Court in *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733 (1983) has clarified the law on this subject by specifying that in all future cases, whether criminal or civil, "only those *ex parte* communications between a court and a jury which are likely to prejudice a party will require reversal." *Id.,* 501 Pa. at 27, 459 A.2d at 734.

Judgment affirmed.