463 A.2d 1036
**COMMONWEALTH of Pennsylvania**

v.

**Craig JACKSON, Appellant.**

Superior Court of Pennsylvania.

Argued March 3, 1983.

Filed June 24, 1983.

Reargument En Banc Denied Aug. 26, 1983.

Petition for Allowance of Appeal Granted Jan. 20, 1984.

554

Stanley P. Stern, Philadelphia, for appellant.

Thomas R. Quinn, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the evidence was insufficient to support his conviction for robbery and criminal conspiracy.

We agree and, accordingly, reverse the judgment of sentence and order appellant discharged.

■ In reviewing challenges to the sufficiency of the evidence, the test is whether, "viewing the evidence in the light most favorable to the Commonwealth and drawing all proper inferences favorable to the Commonwealth, the trier of fact could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt." *Commonwealth v. Keblitis*, 500 Pa. 321, 323, 456 A.2d 149, 150 (1983). So viewed, the facts are as follows:

At approximately 8 a.m. on December 15, 1980, the victim was kicked in the rear by appellant as he exited the center door of a trolley at 20th Street and Girard Avenue in Philadelphia. Appellant acknowledged the calcitration, followed the victim off the trolley and punched him in the eye, knocking his glasses to the ground. Appellant was joined by several trolley-riding colleagues who punched and kicked the victim for a few seconds and attempted to snatch a chain from his neck. One member of the group picked up the victim's glasses and the entire group returned to the trolley. The victim summoned a police officer who stopped the trolley three blocks from the incident and the victim identified appellant and two other group members. Appellant was found guilty in a nonjury trial of robbery and criminal conspiracy arising out of the theft of the victim's glasses. The lower court denied post-trial motions and sentenced appellant to consecutive one-to-two year terms of imprisonment. This appeal followed.

Appellant contends that the evidence was insufficient to support the lower court's verdict that he feloniously inflicted bodily injury upon the victim in the course of committing a theft.[1] Specifically, he argues that the Commonwealth has not established that he intended to commit a theft. "A person is guilty of robbery if, in the course of committing a theft, he: ... (iv) inflicts bodily injury upon another or

---

1. Appellant was charged with six alternative counts of robbery. The lower court found him guilty of feloniously inflicting bodily injury in the course of a theft and acquitted him of the other charges.

threatens another with or intentionally puts him in fear of immediate bodily injury...." 18 Pa.C.S.A. § 3701(a)(1)(iv). "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." *Id.* at § 3701(a)(2). "One of the elements of robbery is that it be in the course of committing a theft or an attempt to commit a theft, and of course, the burden is upon the Commonwealth to prove theft or an attempt to commit a theft." *Commonwealth v. Thompson*, 274 Pa.Superior Ct. 44, 53, 417 A.2d 1243, 1248 (1979). To meet that burden, the Commonwealth must show that the defendant intended to commit or attempt to commit theft. *Id. See generally* 18 Pa.C.S.A. §§ 901 (attempt), 3901–3931 (theft).

■ Here, the Commonwealth offered no evidence of appellant's intent to either commit or attempt to commit a theft. Although appellant assaulted the victim and knocked his glasses to the ground, there is no evidence that appellant picked up the glasses and carried them back to the trolley. Nor do we find it likely that appellant exited the bus and assaulted the victim intending to steal a pair of prescription eyeglasses. Similarly, there is no evidence that appellant tried to grab the victim's chain despite having ample opportunity to do so while the victim was exiting the trolley ahead of him. Rather, the evidence proves that appellant left the trolley to fight the victim and several friends joined in the ensuing melee. Although this evidence may well be enough to sustain a conviction for simple assault,[2] it is not sufficient to prove robbery. Accordingly, we must reverse the conviction.

■ Appellant contends that his conviction for criminal conspiracy was also unsupported by the evidence. "[F]or a defendant to be convicted of conspiracy, the Commonwealth must prove his involvement in an agreement to accomplish a criminal objective and the commission of an overt act in pursuance of the conspiracy." *Commonwealth v. Lewis,*

2. The Commonwealth entered a nolle prosequi on the simple assault information.

276 Pa.Superior Ct. 451, 457, 419 A.2d 544, 547 (1980). *See* 18 Pa.C.S.A. § 903. The information charged appellant with conspiring to accomplish robbery or theft. As we have already determined, the evidence was insufficient to establish appellant's intent to commit or attempt to commit theft and thus, insufficient to establish robbery. There being no evidence that appellant intended to commit a theft or robbery, we find no evidence that appellant conspired to commit a theft or robbery and, accordingly, reverse the judgment of sentence.

Judgment of sentence reversed and appellant ordered discharged.

WIEAND, J., files dissenting opinion.

WIEAND, Judge, dissenting:

Craig Jackson was tried nonjury and was found guilty of robbery[1] and criminal conspiracy.[2] Post trial motions containing general averments of insufficiency of the evidence were denied, and consecutive sentences of imprisonment for not less than one nor more than two years were imposed. This appeal followed. The majority holds that the Commonwealth's evidence was insufficient to prove that an admitted assault committed upon Thomas Mingo by appellant and his cohorts was committed during the course of a theft. My review of the record suggests otherwise; and therefore, I must respectfully dissent.

The crime of robbery is defined in 18 Pa.C.S. § 3701 which, in pertinent part, provides as follows:

"**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

. . . . .

---

**1.** The count of the information on which the robbery conviction was based charged that Craig Jackson "in the course of committing a theft, feloniously did inflict bodily injury upon another."

**2.** A separate information accused Craig Jackson of conspiracy with another person or persons to commit the crimes of robbery and theft and in pursuance thereof the commission of an overt act, i.e., an assault on Thomas Mingo.

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

.    .    .    .    .

(2) An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission."

A person is guilty of an offense if it is committed by his own conduct or by the conduct of an accomplice. 18 Pa.C.S. § 306(a) and (b)(3). An accomplice is a person who, with the intent of promoting or facilitating an offense, aids, agrees or attempts to aid another in planning or committing it. 18 Pa.C.S. § 306(c)(1)(ii). See also: *Commonwealth v. Tate,* 485 Pa. 180, 185, 401 A.2d 353, 355 (1979); *Commonwealth v. Roux,* 465 Pa. 482, 490, 350 A.2d 867, 871 (1976); *Commonwealth v. Bryant,* 461 Pa. 309, 312–313, 336 A.2d 300, 301 (1975); *Commonwealth v. Minnis,* 312 Pa.Super. 53, 458 A.2d 231 (1983); *Commonwealth v. Darden,* 311 Pa.Super. 170, 173, 457 A.2d 549, 550 (1983); *Commonwealth v. Plusquellic,* 303 Pa.Super. 1, 5, 449 A.2d 47, 50 (1982); *Commonwealth v. Cofer,* 257 Pa.Super. 528, 531–532, 390 A.2d 1363, 1365 (1978). See also: *Commonwealth v. Davenport,* 307 Pa.Super. 102, 452 A.2d 1058 (1982).

In determining the sufficiency of the evidence to sustain a conviction, "[a]ll of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of a motion in arrest of judgment is to admit all the facts which the Commonwealth's evidence tends to prove." *Commonwealth v. Hazlett,* 429 Pa. 476, 478, 240 A.2d 555, 556 (1968), quoting from *Commonwealth v. Tabb,* 417 Pa. 13, 16, 207 A.2d 884, 886 (1965). Accord: *Commonwealth v. Waldman,* 484 Pa. 217, 222–223, 398 A.2d 1022, 1024–1025 (1979); *Commonwealth v. Barnes,* 310 Pa.Super. 480, 483, 456 A.2d 1037, 1038 (1983); *Commonwealth v. Plusquellic, supra* 303 Pa.Super. at 6, 449 A.2d at 49; *Commonwealth v. Bentley,* 276 Pa.Super. 41, 44, 419 A.2d 85, 86 (1980); *Commonwealth v. Williams,* 273 Pa.Super. 578, 582, 417 A.2d 1200, 1201 (1980). "It is well established that the test

of the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all proper inferences favorable to the Commonwealth, the trier of fact could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt." *Commonwealth v. Keblitis*, 500 Pa. 321, 323, 456 A.2d 149, 150 (1983). See also: *Commonwealth v. Bachert*, 499 Pa. 398, 402, 453 A.2d 931, 933 (1982); *Commonwealth v. Coccioletti*, 493 Pa. 103, 107, 425 A.2d 387, 389 (1981); *Commonwealth v. Darden, supra* 311 Pa.Super. at 172, 457 A.2d at 550; *Commonwealth v. Grabowski*, 306 Pa.Super. 483, 486–87, 452 A.2d 827, 829 (1982). "However, it is the province of the trier of the fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence." *Commonwealth v. Guest*, 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Yost*, 478 Pa. 327, 332, 386 A.2d 956, 959 (1978); *Commonwealth v. Newman*, 310 Pa.Super. 493, 496, 456 A.2d 1044, 1045 (1983); *Commonwealth v. Wilcox*, 310 Pa.Super. 331, 335, 456 A.2d 637, 639 (1983).

With these principles as a steadfast guide, an examination of the evidence presented in the instant case reveals that on the morning of December 15, 1980, Thomas Mingo was taking the trolley to work. While a passenger on the trolley Mingo did not have conversation or physical contact with any other passengers. As he exited the trolley at 20th Street and Girard Avenue in the City of Philadelphia, he was kicked in the rear by Craig Jackson, the appellant. Mingo was then followed from the trolley by appellant and approximately eight black youths. When Mingo turned around to inquire concerning the reason for having been kicked, appellant punched him in the left eye, causing the eye to be cut. Thereafter "the whole group started swinging and some grabbed and kicked at [Mingo]." The incident was narrated by Mingo during direct examination as follows:

"Q. How soon after you were punched by the defendant, did the others jump on you?

560

A. Immediately.
MR. HYKEL (defense counsel):
Objection....

.   .   .   .   .   .

THE COURT: I will allow it. You may answer the question.

A. I was jumped immediately after that. *They started swinging and went through my jacket.*

Q. *Someone grabbed your chain?*[3]

A. *Tried to.*

Q. Were you standing up at that point or were you on the ground?

A. I was bent over. Once I got hit, I was bent over, in a bent over position.

Q. Were you able to see at this point how many of the group were punching you or jumping you?

A. It was just hands and feet. I couldn't count how many people were swinging at me.

Q. Did you lose any item from your person as a result of this?

A. Yes.

Q. What?

A. My glasses, the glasses I am wearing now.

.   .   .   .   .

Q. Did you feel, sir, how the glasses came to come off your face?

A. Yes. Once I was hit, my eye glasses fell to the ground.

Q. They came off of your face at what point?

A. Once I was hit by the defendant over there.

Q. Approximately how long did this incident take from the time you were struck by the defendant until the group was done?

A. A few seconds. Seconds, I guess.

**3.** Mingo had been wearing a gold chain around his neck at the time of the assault.

Q. And what happened after you were done being struck?

A. They grabbed my black frames and they ran back onto the trolley.

Q. Did you see which member of the group grabbed the frames?

A. No, I didn't.

Q. At this point you didn't have your glasses on?

A. I didn't have them on.

Q. Did you see the defendant after the group was done with you, what he did, if anything?

A. He also boarded the trolley.

Q. Would you describe for the Court, sir, where in relation to the other people in this group did the defendant get on the trolley?

A. First."

Trial transcript, pages 35–38 (emphasis added). Mingo then summoned police assistance and told the police he had been robbed. The trolley was stopped, and appellant was identified and arrested. Prior to the preliminary hearing, appellant and his sister called Mingo by telephone. The sister said she knew where Mingo's glasses were and promised to get them and return them to Mingo. The glasses were returned to Mingo in a broken condition immediately prior to the start of the preliminary hearing, when Mingo was requested to drop the charges. He refused.

This evidence, in my judgment, was sufficient to prove that appellant and his accomplices had inflicted personal injury upon an innocent victim during the course of committing or attempting to commit a theft. The fact that they were successful in taking only a pair of glasses which had been knocked from the victim during the assault did not preclude an inference of intent to rob which could be drawn by the trier of the fact from the evidence.

Appellant testified that he was a passenger on the trolley and that Mingo bumped into him. Appellant said that he became angry because Mingo didn't say "excuse me" and thereafter exited the trolley at Mingo's invitation to fight.

Two high school students also testified that appellant and Mingo engaged in a fist fight by mutual consent. The trial judge, however, expressly rejected this testimony as not credible. He found that the assault had been made upon Mingo by appellant and his accomplices as part of and during the course of an attempt to commit a theft.

The majority rejects this finding of the trial court. Declining to view the evidence and the reasonable inferences therefrom in the light most favorable to the Commonwealth, the majority substitutes its own finding. Thus, it finds that it was not "likely that appellant exited the bus and assaulted the victim intending to steal.... Rather, the evidence proves that appellant left the trolley to fight the victim and several friends joined the ensuing melee."

If I had been the trial judge, perhaps I would have believed the defense witnesses and found that appellant's crime rose no higher than the lesser offense of assault. Such, however, is not the standard of appellate review. The majority, in my judgment, has exceeded the proper scope of appellate review and has usurped the function of the trial judge. Hence my dissent. I would hold that the evidence and the reasonable inferences to be drawn therefrom were sufficient to support the findings of the trial court. Therefore, I would affirm the judgment of sentence.