J-S08016-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CRAIG AARON DOSWELL, JR., | |
| Appellant | No. 763 WDA 2017 |

Appeal from the Judgment of Sentence entered April 18, 2017,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-CR-0001818-2016.

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY  KUNSELMAN, J.:                    FILED APRIL 5, 2018

Craig Doswell, Jr., appeals from the judgment of sentence, entered after a bench trial, where he was convicted of assault by prisoner, and terroristic threats.[1]  After careful review, we affirm.

The trial court summarized the facts of this case as follows:

> The facts as viewed in the light most favorable to the Commonwealth establish that on January 10, 2016, at approximately 9:50 p.m., Norman Roper was attacked by [Doswell] while the two men were inmates at the Allegheny County Jail.  At the time of the attack, Mr. Roper and [Doswell] had been alone in a prison cell.  Mr. Roper testified that, as he stood up to use the bathroom, [Doswell] suddenly wrapped his hands around Mr. Roper's throat.  [Doswell] then "slammed" Mr. Roper's head into a brick wall, telling Mr. Roper that he was going to make him

_____

[1] 18 Pa.C.S.A. §§ 2703(a) and 2706(a), respectively.

*Former Justice specially assigned to the Superior Court.

"his bitch" and that Mr. Roper "was going to be sucking his dick." Mr. Roper testified that [Doswell] was "choking the shit out of" him and that he could feel [Doswell's] hands squeezing his neck. [Doswell] choked Mr. Roper to the point that Mr. Roper eventually lost consciousness. Mr. Roper was unable to estimate how long he had been unconscious.

When Mr. Roper regained consciousness, [Doswell] was holding him up and had him "bent over his bed." [Doswell] continued to threaten Mr. Roper by stating that he was going to make Mr. Roper "his bitch." [Doswell] also told Mr. Roper that, when Mr. Roper's "cellie came in, he was going to make him his bitch" too and that they would "both be sucking his dick." [Doswell] was unable to take the attack any further because one of the prison guards approached the cell. At that point, [Doswell] let go of Mr. Roper and walked over to the window while Mr. Roper sat on the bed.

Correctional Officer ("CO") David Holland and Nurse Julie Ann Rager were distributing medications to the inmates at the time of the attack. They were the first authority figures to have the opportunity to observe Mr. Roper immediately after the attack happened. CO Holland testified that, when they approached Mr. Roper's cell, Mr. Roper looked "fearful," "distraught" and "panicked." Mr. Roper immediately asked to be removed from the cell. CO Holland then proceeded to alert Captain Vanchieri to the situation. When Nurse Rager made contact with Mr. Roper, she noticed that Mr. Roper's hand was "shaking" when he reached for his medications and that his hands were "very [] clammy." Nurse Rager also observed that Mr. Roper's face "appeared to be very ashen, pale." She asked Mr. Roper if he was okay because she did not believe that he looked well. Mr. Roper "shook his head" in response; he told Nurse Rager that he was not okay and that she had to get him "out of here."

Mr. Roper's cell door eventually was opened so that Nurse Rager could assess his condition. She noted visible "dark, red marks around his neck," as well as "some petechiae bruising" under his right eye. Nurse Rager testified that the neck marks were caused "from something being around his neck" and that "the marks under his eye

[we]re the result of broke blood vessels." Nurse Rager explained that "[p]etechiae is a type of bruising caused by increased pressure in the capillary beds that explode near the surface of the skin." She also noted that Mr. Roper had "frontal forehead tenderness with small area of redness" and that the area was "tender to the touch to palpate."

After Captain Vanchieri was alerted to the situation, he spoke with Mr. Roper and observed that Mr. Roper had "some light scratch marks on his neck." Mr. Roper informed the captain that he had been attacked, and the captain photographed Mr. Roper's neck injuries. Mr. Roper was transported to West Penn Hospital for treatment and observation on the same night as the attack. Medical personnel examined him for a potential sexual assault, but it was ultimately determined that no sexual assault had occurred while Mr. Roper was unconscious. Mr. Roper testified that he had a "goose egg" on the back of his head from [Doswell] slamming his head into a brick wall and that he suffered some residual aches and pains for a few days following the incident.

Trial Court Opinion, 8/22/2017, at 3-5 (citations omitted).

On January 24, 2017, Doswell was convicted on both charges during a bench trial. On April 18, 2017, the trial court sentenced Doswell to a term of two to four years of incarceration followed by two years of probation. Doswell filed this timely appeal that was later amended. Both Doswell and the trial court have complied with Pa.R.A.P. 1925.

Doswell raises one issue on appeal:

I.    Was not the evidence insufficient as a matter of law to sustain the conviction of Assault by Prisoner where the Commonwealth failed to prove beyond a reasonable doubt that [Doswell] intended to use force or actually employed force likely to produce serious bodily injury?

Doswell's Brief at 7.

Our standard of review is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Jones, 886 A.2d 689, 704 (Pa. Super. 2005), appeal denied, 897 A.2d 452 (Pa. 2006) (citations omitted).

A person is guilty of Assault by Prisoner if that person is "confined in or committed to any . . . county detention facility . . . located in this Commonwealth . . . [and] if he, while so confined . . . intentionally or knowingly, commits an assault upon another . . . by any means or force likely to produce serious bodily injury." 18 Pa. C.S.A. §2703(a). Serious bodily injury is defined as:

[A] bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted

loss or impairment of the function of any bodily member or organ.

18 Pa.C.S.A. § 2301.

In support of his sufficiency challenge, Doswell argues:

The Commonwealth failed to prove beyond a reasonable doubt that [he] committed Assault by Prisoner in this case. Specifically, the Commonwealth failed to establish that [he] intended to use force likely to produce serious bodily injury, or caused serious bodily injury to Norman Roper. [Mr.] Roper did not suffer serious or permanent disfigurement, nor did he lose the function of any organ or any other part of his body. Nor was there a substantial risk of death here.

Under the statute, [Doswell] can only be convicted if it is proven that he intended to commit or knowingly committed an assault by a force likely to produce serious bodily injury. Yet, looking at the factors listed in the Alexander case, we know that [Mr. Roper] was six feet tall; there was no evidence of a great size differential in height or weight. Doswell did not have to be restrained from continuing to fight, when the correctional officer came to the door of the cell, all looked normal. One officer observed no marks on [Mr. Roper], another said he saw "light scratch marks." More tha[n] this must be shown to prove an intent to commit serious bodily injury. With this, and other inconsistencies in the testimony, the evidence is insufficient to support the conviction. [Doswell's] judgment of sentence should be overturned and his case remanded for resentencing.

Doswell's Brief at 15-16. We disagree.

Although Doswell's testimony at trial provided the trial court with an entirely different version of events, the fact finder, in this case, the trial court, made findings of credibility and determined which testimony to believe. See, e.g., Commonwealth v. Tate, 401 A.2d 353, 354 (Pa. 1979). Considering the testimony provided by both the Commonwealth and Doswell, the trial court reasoned:

Contrary to the [Doswell's] assertion on appeal, the evidence presented at the non-jury trial was more than sufficient to establish that [he] used "force likely to produce serious bodily injury" when he slammed Mr. Roper's head into a brick wall and strangled Mr. Roper to the point that he rendered him unconscious and caused petechiae bruising to appear under his eye. As the trier-of-fact in this case, this court was able to study the demeanor of the witnesses, and it found Mr. Roper's account of events to be particularly genuine, consistent, credible and corroborated by other evidence. To be sure, the fact that Mr. Roper reported the attack immediately after it occurred and the fact that neutral parties observed visible physical injuries in the form of red marks around Mr. Roper's neck and the petechiae under his eye lent substantial credibility to his testimony. As noted, CO Holland and Nurse Rager observed Mr. Roper's demeanor following the incident, and both of them noted that he appeared shaken, fearful, distraught and panicked. Additionally, Mr. Roper was transported to the hospital on the same night of the attack so that his injuries could be assessed, and this court believed him when he testified that his injuries were not self-inflicted.

The court recognizes that [Doswell] provided a substantially different account of what transpired in the cell. At trial, [Doswell] acknowledged that a confrontation occurred on the night of the incident, but he claimed that the confrontation occurred because Mr. Roper had been hounding him for marijuana. [Doswell] testified that Mr. Roper head-butted him, and that he merely pushed Mr. Roper away and told him to get out of his face. He maintained that he never slammed Mr. Roper's head into a wall or choked him. [Doswell] also testified that he was the one who asked CO Holland to be removed from the cell. [Doswell's] statement to police following the incident essentially mirrored his trial testimony. [Doswell] claimed that Mr. Roper. Was making false allegations, and he maintained that he was "not a homosexual in any way, and the he wouldn't have said those things to him." [Doswell] did concede that there was a verbal altercation between the regarding marijuana, and, though he admitted to pushing Mr. Roper away from him, he denied making any sexual threats.

In an attempt to undermine the credibility of Mr. Roper's testimony, [Doswell] argued that Mr. Roper had been suffering from blackouts prior to the incident due to his medications, and he attempted to suggest that the petechiae observed under Mr. Roper's eye was the result of prolonged straining." However, after considering the evidence as a whole, and after assessing the tone, demeanor and credibility of all the witnesses, the court rejected [Doswell's] version of events as not believable and unsupported by any other evidence. The court found that there was compelling circumstantial evidence to support Mr. Roper's claim that [Doswell] slammed his head into a brick wall, choked him to the point of unconsciousness, and made sexually explicit threats. Again, Mr. Roper's version of events was corroborated by neutral witnesses who observed Mr. Roper's physical injuries and emotional demeanor immediately following the incident. The court notes that, although no serious bodily injury ultimately occurred, the attack ceased only because CO Holland and Nurse Rager were approaching the cell to distribute medications.

The court also notes that the testimony of CO Holland and Nurse Rager did not support [Doswell's] testimony that he was the one asked to be removed from the cell. To the contrary, these witnesses both testified that it was Mr. Roper who appeared to be visibly upset and that it was Mr. Roper who asked to be taken out of the cell. CO Holland specifically testified that, it was not for Mr. Roper's outward appearance and statement that he wanted to leave the cell, he would not have noticed anything had transpired between the two (2) men because everything else appeared normal. CO Holland testified that, while Mr. Roper appeared to be "distraught" and "panicked," [Doswell's] demeanor was "normal."

It should be noted that while Mr. Roper was on some medication, his medications were for urinary problems and not for any psychiatric issues. Moreover, the mere fact that Mr. Roper experienced blackouts prior to the incident does not negate a finding that the loss of consciousness he suffered on the night or the incident was caused by [Doswell]. To be sure, Mr. Roper specifically testified that he did not cause the injuries that he sustained on the night

of January 10, 2016, and the court found his testimony to be worthy of belief.

In sum, although no one witnessed the actual attack take place, there was compelling circumstantial evidence to prove beyond a reasonable doubt that [Doswell] choked Mr. Roper to the point of loss of consciousness and slammed his head into a brick wall.

Trial Court Opinion, 8/22/17, 7-10 (citations omitted). We cannot disturb the fact finder's credibility determinations. Commonwealth v. Kinney, 157 A.3d 968 (Pa. Super. 2017).

Doswell relies heavily on the factors our Supreme Court set forth in Commonwealth v. Alexander, 383 A.2d 887 (Pa. 1978). In that case, the Defendant punched his victim in the face, breaking the victim's nose. Alexander, 383 A.2d at 889. There, the Commonwealth agreed that the defendant did not inflict serious bodily injury, but argued that striking the victim in his head, a "vital part of the human body," showed the requisite intent to cause such injury. Id. Our Supreme Court disagreed stating that "we cannot say the mere fact that a punch was delivered to that portion of the body is sufficient, without more, to support a finding that [defendant] intended to inflict serious bodily injury." Id. The court ruled that additional evidence was needed to find the requisite intent absent actual serious injury. Id.

Presenting facts such as the use of a weapon and/or whether the assailant was "disproportionately larger or stronger than the victim" could lead to a finding of requisite intent. Id.

The case before this Court is distinguishable from Alexander.  Here, Doswell's attack was far more egregious than a mere punch.  The trial court found Doswell strangled Mr. Roper.  Choking a person to the point of unconsciousness is substantially more harmful and aggressive than striking one punch to someone's head.  We find that the Commonwealth did not have to present additional evidence to allow the trial court, acting as fact finder, to make the requisite finding of intent when Doswell strangled Mr. Roper until he blacked out.

Our review of the record and pertinent case law supports the trial court's conclusion.  See, Commonwealth v. Dailey, 828 A.2d 356, 361 (Pa. Super. 2003) (upholding assault by prisoner conviction when defendant, punched victim several times in the face, dazing victim); see also Commonwealth v. Everett, 596 A.2d 244, 246-47 (Pa. Super. 1991) (concludes evidence was sufficient to sustain a conviction for assault by prisoner when the defendant slammed a large, heavy steel door while the victim was standing in the doorway).  Thus, Doswell's sufficiency challenge fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date: 4/5/2018