J-A16021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NORMAN SHAHEE TURPIN | : | |
| | : | |
| Appellant | : | No. 1871 MDA 2018 |

Appeal from the Judgment of Sentence Entered June 25, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003242-2017

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 17, 2019**

Norman Shahee Turpin (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of criminal conspiracy to deliver heroin, 18 Pa.C.S.A. § 903(a)(1).  After careful review, we affirm.

On April 5, 2017, Detective Russell Schauer, a team leader in the York County Drug Task Force unit, directed a controlled purchase of narcotics. Detective Schauer testified:

> [T]he [confidential] informant . . . debriefed me [about] what was going to happen or what they expected to happen.  We then put a plan in place to watch what was predicted to happen, and that is the informant was to purchase 3 grams of heroin for $320 through a middleman.  This we were able to identify as Sean Thomas.  Sean Thomas would take them to a location in York City where they would purchase the heroin [from] another individual and they would travel back to a hotel.

N.T., 5/8/18, at 85.  Detective Schauer explained that the CI and Thomas agreed to meet at the Econo Lodge Motel on Route 30.  Detective Schauer

_____

* Former Justice specially assigned to the Superior Court.

provided the CI with official funds[1] to make the drug purchase. *Id.* at 87. Detective Schauer observed Thomas exit the motel and enter the CI's vehicle. The CI drove the vehicle into the city, and parked on South Queen Street and East Cottage. *Id.* at 89. Thomas then exited the vehicle and began to walk south towards East Cottage, where he met Appellant. *Id.* at 90. Appellant and Thomas engaged in a hand-to-hand transaction and then separated. Thomas returned to the vehicle and gave the heroin to the CI; the CI then proceeded to drive the two men back to the Econo Lodge. *Id.* at 93. Detective Schauer directed police in a marked patrol car to follow the vehicle and arrest Thomas and the CI (the latter being arrested as a ruse), and the police recovered heroin from the CI. *Id.* at 92-93.

Following his arrest, Thomas identified his supplier as Appellant and agreed to participate in a controlled purchase. *Id.* at 97. Thomas called Appellant to set up a meeting for Thomas to purchase 5 grams of heroin for $425 from Appellant. Thomas and Appellant agreed to meet at East Cottage. Upon observing Appellant arrive at the location, Detective Schauer authorized Appellant's arrest. A search of Appellant revealed an iPhone, wallet, and three $20 bills, but no drugs. *Id.* at 102. However, Detective Schauer testified that

---

[1] Official funds are money provided by the police department; the currency is photographed or photocopied to record the serial number and track the money.

the three $20 bills recovered from Appellant matched the same official funds provided to the CI during the initial controlled purchase. *Id.* at 111.

The Commonwealth charged Appellant with possession with intent to deliver drugs, criminal conspiracy, and possession with intent to deliver a non-controlled substance.[2] A jury trial was held on May 8, 2018 and May 9, 2018, during which the Commonwealth presented the testimony of Detective Schauer, Officer Adam Bruckhart and Sean Thomas to describe the transactions they witnessed. No defense witnesses took the stand. At the conclusion of trial, the jury acquitted Appellant of both possession charges, but convicted him of criminal conspiracy. On June 25, 2018, the trial court sentenced Appellant to 21 to 42 months of incarceration. Appellant filed a timely post-sentence motion, which was denied following a hearing on October 30, 2018.

This timely appeal followed. Appellant complied with the trial court's directive to supply a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court has filed a responsive Pa.R.A.P. 1925(a) opinion. Appellant presents a single issue for our review: "[Did t]he Commonwealth present[ ] insufficient evidence in order to sustain a conviction for conspiracy to deliver heroin since there was no direct or circumstantial evidence of an

---

[2] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 903(a)(1), and 35 P.S. § 780-113(a)(35).

agreement between Appellant and Sean Thomas for Thomas to deliver drugs to a third party." Appellant's Brief at 4.[3]

> Our standard of review for sufficiency claims is well settled:
>
> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." **Commonwealth v. Widmer**, [ ] 744 A.2d 745, 751 ([Pa.] 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Commonwealth v. Brewer**, 876 A.2d 1029, 1032 (Pa. Super. 2005).
>
> Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." **Id.**; **see also Commonwealth v. Aguado**, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. **See Commonwealth v. DiStefano**, 782 A.2d 574, 582 (Pa. Super. 2001).
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. **See Brewer**, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a

_____

[3] Appellant's Rule 1925(b) statement of errors contains issues that Appellant failed to address in his statement of questions involved or in the body of his brief, including a challenge to the admissibility of testimony and a weight of the evidence claim. **See** Rule 1925(b) Statement, 12/6/18. Because Appellant has abandoned these issues on appeal, we will not address them. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); **see also** Pa.R.A.P. 2119; **Gurley v. Janssen Pharmaceuticals, Inc.**, 113 A.3d 283, 288 n.11 (Pa. Super. 2015) (issue is waived for purposes of appellate review when an appellant does not develop it in brief).

defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa. Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer*, 876 A.2d at 1032.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013)

(quoting *Commonwealth v. Pettyjohn*, 64 A.3d 1072, 2013 49 (Pa. Super.

2013)).

The Pennsylvania Crimes Code defines conspiracy as follows:

§ 903. Criminal conspiracy

**(a) Definition of conspiracy. --** A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission  of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903.

In other words, the Commonwealth must prove:

(1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a 'co-conspirator') to engage in the crime; and (3)  the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime.  The essence

of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.

*Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004) (internal quotation marks and citations omitted).

This Court has held that "[t]he essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be accomplished." *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002). Mere presence at the scene of a crime or association with the perpetrators is not sufficient. *Id.* "Rather, the Commonwealth must prove that the defendant shared the criminal intent, *i.e.*, that the Appellant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." *Id.* Proof of a conspiracy is nearly always based on circumstantial evidence. *Id.* "The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id.* (quoting *Commonwealth v. Johnson*, 719 A.2d 778, 784 (Pa. Super. 1998 (*en banc*)). "The evidence must, however, 'rise above mere suspicion or possibility of guilty collusion.'" *Id.* (quoting *Commonwealth v. Swerdlow*, 636 A.2d 1173 (Pa. Super. 1994)).

The following four factors are relevant in discerning the existence of a criminal conspiracy:

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the

commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Id.* (quoting **Commonwealth v. Olds**, 469 A.2d 1072, 1075 (Pa. Super. 1983).

Appellant argues that the record does not contain sufficient evidence of an agreement between Appellant and Thomas to commit a criminal act. In particular, Appellant asserts that the evidence was insufficient to prove the existence of an agreement between Appellant and Thomas that Thomas would sell the heroin that he purchased from Appellant. Appellant's Brief at 11-15. This argument is not supported by prevailing law.

As noted above, our Courts have found evidence of an agreement to be lacking where the evidence reflected nothing more than a mere association among the alleged co-conspirators. For example, in **Commonwealth v. Kennedy**, 453 A.2d 927 (Pa. 1982), the appellant and his co-defendant got into a spontaneous argument with the appellant's landlord and beat him severely. *Id.* at 929. The Supreme Court reasoned that the simultaneous participation in an assault that "erupted from an argument" was not "indicative of there having been an agreement, explicit or implicit, as to commission of the assault." *Id.* at 930. The Court concluded that the incident was "perfectly consistent with the presumption that [the co-defendant] acted independently and spontaneously," and that the record contained "no evidence upon which existence of the common understanding or agreement requisite to the charge

of conspiracy might properly be inferred[.]" *Id.* Thus, the Supreme Court affirmed this Court's order vacating the conspiracy conviction. *Id.*

In *Commonwealth v. McCall*, 911 A.2d 992 (Pa. Super. 2006), officers observed the defendant looking up and down a street on which his cohorts were selling narcotics. After several transactions, the defendant received some cash from his cohorts. The police apprehended the defendant and a search revealed $1,508.00 in cash. This Court concluded that sufficient evidence of a conspiracy existed, reasoning "[e]ven though [the defendant] did not physically handle the drugs transacted, he clearly took an active role in the illicit enterprise" by acting as a lookout and receiving proceeds from sales. *Id.* at 997.

Here, the evidence shows that Appellant coordinated with Thomas to possess and deliver controlled substances. Detective Schauer observed Appellant deliver heroin to Thomas in exchange for money, and later observed Appellant return to the same location to conduct another transaction. At the time of Appellant's arrest, the police confiscated funds that were later identified as the same official funds used in the initial controlled purchase.

As in *McCall*, the evidence presented supports a finding that Appellant took an active role in a drug-selling enterprise with Thomas, *i.e.*, intended and agreed with Thomas to commit a criminal act, and committed an overt act by providing Thomas with heroin in exchange for cash. For instance, police observed Appellant return to the location of the controlled purchase, where he possessed the same official funds used during the initial exchange with

Thomas. Therefore, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence sufficed to prove beyond a reasonable doubt the existence of an agreement between Appellant and Thomas to deliver heroin.

Judgment of sentence affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/17/2019