J-S38026-24

2025 PA Super 179

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MARK WELLMAN :
:
Appellant : No. 2670 EDA 2023

Appeal from the Judgment of Sentence Entered June 15, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000127-2020

BEFORE: STABILE, J., BECK, J., and STEVENS, P.J.E.*

OPINION BY BECK, J.:                                      **FILED AUGUST 18, 2025**

Mark Wellman ("Wellman") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of second-degree murder, robbery, conspiracy, and related crimes. Wellman's counsel, Attorney Michael I. McDermott, ("Counsel") originally filed in this Court a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). Because one of the issues identified by Counsel was not wholly frivolous, we denied Counsel's petition and remanded for the filing of an advocate's brief. ***See Commonwealth v. Wellman***, 334 A.3d 389, *6-8 (Pa. Super. 2025) (non-precedential decision) (citing Trial Court Opinion, 2/6/2024, at 3-9). After a

_____

* Former Justice specially assigned to the Superior Court.

delay,[1] Counsel has filed an advocate's brief arguing that the evidence was insufficient to convict Wellman of conspiracy to commit second-degree murder. The Commonwealth filed a responsive brief, contending for the first time that the crime of conspiracy to commit second-degree murder is not a cognizable offense. Upon review, we conclude that the Commonwealth introduced sufficient evidence to convict Wellman of conspiracy to commit second-degree homicide and that such a crime is cognizable pursuant to the reasoning set forth in **Commonwealth v. Fisher**, 80 A.3d 1186 (Pa. 2013). We therefore affirm Wellman's judgment of sentence.

As we set forth in our prior decision,[2] on October 5, 2019, after arguing with Renee Edwards, Wellman returned to Edwards' apartment with his brother, Dominique Wellman ("Dominique"). After Edwards let him into the apartment, Wellman pulled a handgun from his waistband and waved it around. Wellman repeatedly demanded money while pointing his handgun at Edwards, Edwards' unidentified female friend, and Anthony White, all of whom were inside Edwards' apartment. Dominique then joined him by pointing what

---

[1] Counsel did not file the brief within the timeframe set by this Court, necessitating a remand to determine whether Counsel had abandoned Wellman. After the trial court ascertained that Counsel had not, Counsel submitted an advocate's brief on April 25, 2025.

[2] For a full recitation of the facts and procedural history, **see Wellman**, 334 A.3d 389, at **1-2 (citing Trial Court Opinion, 2/6/2024, at 3-10).

appeared to be a trash bag-covered rifle[3] towards the trio as Wellman patted each person down. After robbing the three individuals of items—including their wallets, watches, cell phones, and keys—Wellman knocked on the bedroom door of Curtis Hill and insisted that Hill join the others. When Hill emerged and refused to give the brothers anything, Wellman pushed Hill down on a bed and complained that Hill was defiant. One of the women told the brothers that Hill had a computer in his room, which Dominque retrieved. Wellman and Dominique grew increasingly agitated regarding the small yield of the robbery. Hill tried to get up, which prompted Wellman to exclaim that he was sick of Hill. While standing one to two feet away, Wellman pointed the gun at Hill's head and pulled the trigger, killing him.

Afterwards, the brothers ordered the other three victims to lay down and forced White to remove his pants before leaving with the items they stole. Shortly thereafter, White left the apartment without pants or shoes, flagged down nearby police officers, and reported the robbery. White led the officers back to the apartment, where they discovered Hill's body and a disposable glove. Meanwhile, after a security guard saw Wellman and Dominique running down a nearby alley shedding clothing and discarding a revolver, police officers apprehended Wellman and Dominique, who were hiding in the alley.

_____

[3] Dominque told the police that the trash bag actually contained a liquor bottle that he held like a weapon.

The officers discovered each with a stolen watch from White on his person; Dominque also had White's phone. Officers brought White and Edwards to the alley. White identified Wellman and Dominique as the people who had shot Hill and committed the robbery. In front of the officers, Wellman threatened Edwards and called her a rat and a snitch. The officers located several items discarded by the brothers in the alley, including a jacket, a plaid shirt, and a backpack containing two computers, a white t-shirt, a face mask, and a revolver. Subsequent testing indicated that gunshot residue was present on the jacket and DNA from either Wellman or Dominque was present on the shirts, backpack, and face mask.

The Commonwealth established the above facts at a jury trial through forensic evidence, the testimony of police officers and White, and a video-recorded statement Dominque provided to police. The Commonwealth played Dominque's statement for the jury after Dominque claimed on the stand that he remembered nothing about the incident, despite having pled guilty to several crimes connected to it and implicating himself and Wellman in his statement to the police. Wellman testified on his own behalf, placing himself near Edwards' apartment but denying that he robbed or killed anyone.

The jury convicted Wellman of four counts of robbery, three firearms offenses, conspiracy, and second-degree murder. On June 15, 2023, the trial court imposed a mandatory sentence of life imprisonment without the possibility of parole for the murder charge, and a consecutive sentence of five

to ten years of incarceration for one of the robberies. No further penalty was imposed on any other counts. Wellman's trial counsel filed a post-sentence motion in arrest of judgment, which was denied by operation of law. Trial counsel filed a timely notice of appeal. Subsequently, the trial court appointed Counsel as Wellman's appellate counsel. Counsel complied with the order to file a Rule 1925(b) statement.

Counsel filed an **Anders** brief, asserting that he was unable to identify any non-frivolous issues to raise on appeal. **See Anders** Brief at 14. This Court disagreed with Counsel's assessment in one respect, concluding that a challenge to the sufficiency of the evidence regarding Wellman's conviction for conspiracy to commit second-degree homicide would not lack any basis in law or fact. **Wellman**, 334 A.3d 389, at *8 (quoting **Commonwealth v. Blauser**, 166 A.3d 428, 434 (Pa. Super. 2017) ("While ultimately, appellant may not be entitled to any relief, we cannot say that the appeal is 'wholly frivolous,' i.e., without any basis in law or fact.")). To the contrary, we observed that this Court has stated that whether conspiracy to commit second-degree murder constituted a cognizable offense was an open question that Pennsylvania's appellate courts had yet to answer. **Id.** at *7 (citing **Commonwealth v. Mitchell**, 135 A.3d 1097, 1101 n.2 (Pa. Super. 2016)). We further noted that this Court had previously held that where a single conspiracy involved multiple criminal objectives, the defendant "could only be found guilty of conspiracy to commit … [the] crime [constituting] the

underlying foundation of the agreement upon which the conspiracy charges were based." *Id.* at *8 (quoting *Commonwealth v. Rivera*, 238 A.3d 482, 490 (Pa. Super. 2020), which in turn quoted *Commonwealth v. Barnes*, 871 A.2d 812, 821 (Pa. Super. 2005)). We directed Counsel to submit an advocates' brief "concerning the validity" of this conviction, "as well as any other non-frivolous issues that counsel may identify." *Id.*

Counsel complied, submitting an advocate's brief challenging the sufficiency of the evidence to support Wellman's conviction of conspiracy to commit second-degree murder and asserting that he identified no other issue of merit. Advocate's Brief at 4, 13-16. Wellman argues that the information indicated that the Commonwealth was charging him with conspiracy to commit "murder/robbery," but that the facts established only that he and his brother initially planned to rob the victims without a plan to murder Hill. *Id.* at 14. Although the trial court "properly instructed" the jury on the elements of a conspiracy, Wellman contends that the verdict sheet submitted to the jury "only included the conspiracy to commit murder and not the robbery." *Id.* at 14-15. Wellman maintains that the conspiracy's main objective was robbery, and pursuant to *Rivera*, he could only be convicted of a conspiracy premised upon robbery, not murder. *Id.* at 15.

We abide by the following standard in reviewing a challenge to the sufficiency of the evidence:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to

- 6 -

the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2019) (citation omitted). Whether the evidence is sufficient to sustain a conviction presents a pure question of law for which our standard of review is de novo. *Commonwealth v. Akeley*, 320 A.3d 106, 110 (Pa. Super. 2024).

The statute criminalizing conspiracy defines the crime as follows:

**(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

In order to prove the existence of a criminal conspiracy, the Commonwealth must demonstrate that the defendant: (1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy.

*Commonwealth v. Chambers*, 188 A.3d 400, 409–10 (Pa. 2018) (quotation marks and citation omitted); *see also* 18 Pa.C.S. § 903(a), (d). As conspiracy

is itself a substantive crime, "[a] defendant may be convicted of both conspiracy and the offense that was the object of the conspiracy." *Commonwealth v. Rios*, 684 A.2d 1025, 1030 (Pa. 1996).

"The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators." *Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004). It is essential that the co-conspirators have a shared criminal intent. *See Commonwealth v. Weston*, 749 A2d. 458, 463 (Pa. 2000). "[T]he agreement must rest upon the mutual specific intent to carry out a particular criminal objective." *Chambers*, 188 A.3d at 410.

A conspiracy may have multiple criminal objectives. *See* 18 Pa.C.S. § 903(c). A person who conspires "to commit a number of crimes," however, "is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." *Id.*; *see also Commonwealth v. Andrews*, 768 A.2d 309, 314 (Pa. 2001) (noting that section 903(c) requires a factual assessment of "either the conspiratorial agreement or the relationship of the conspirators"); *Commonwealth v. Koehler*, 737 A.2d 225, 245 (Pa. 1999) (listing factors to help determine whether the evidence establishes a single conspiracy or multiple conspiracies).

Given the nature of a criminal enterprise, the Commonwealth may rely upon circumstantial evidence to prove the existence and scope of the agreement, as it rarely will have direct evidence to support that element of

the offense. *Andrews*, 768 A.2d at 315. While the Commonwealth must show "more than mere association," it may "inferentially establish[]" the conspiracy by "the relation, conduct or circumstances of the parties," combined with the "overt acts on the part of co-conspirators." *Commonwealth v. Roux*, 350 A.2d 867, 870 (Pa. 1976).

Separately, "a person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501. The Crimes Code divides homicide into degrees of culpability. Murder of the second degree, also known as felony murder, is a criminal homicide committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony. 18 Pa.C.S. § 2502(b).[4] The statute defines perpetration of a felony as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S. § 2502(d); *see also* 18 Pa.C.S. § 3701(a)(1)(iv) ("A person is guilty of robbery, if in the course of committing a theft, he … inflicts serious bodily injury upon another.").

_____

[4] *Cf.* 18 Pa.C.S. § 2502(a) (indicating that murder of the first degree is a criminal homicide that is "committed by an intentional killing"), (c) (providing that murder of the third degree is all other types of murder, i.e., not an intentional killing or a killing during a perpetration of the enumerated felonies).

- 9 -

Second-degree murder does not require a specific intent to kill. *Rivera*, 238 A.3d at 501 (citation omitted). Rather, a person has the requisite intent for second-degree murder if he has a "wanton disregard for the fact that death **might** result which is inherent in the commission of a dangerous felony." *Id.* (emphasis added). Thus, the "malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim." *Id.* at 500. Stated another way,

> [w]hen an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact that the actor engaged in a felony of such a dangerous nature to human life because the actor, as held to a standard of a reasonable man, knew or should have known that death might result from the felony.

*Commonwealth v. Legg*, 417 A.2d 1152, 1154 (Pa. 1980).

Here, Dominque's police statement established that he and Wellman agreed to rob the people in the apartment and that Wellman was the shooter. Based upon his statement and other testimony, the evidence established that Wellman left Edwards' apartment and returned with his brother. The duo brandished actual and simulated guns and worked together to threaten and search each victim until they achieved a satisfactory amount of proceeds. Wellman shot Hill while trying to rob him after he and his brother grew frustrated that their expedition was not yielding a greater bounty. The pair then left and ran down the alley together, shedding evidence as they went.

Given these facts, the Commonwealth sufficiently proved through circumstantial evidence that Wellman and Dominque intended to promote or facilitate second-degree murder by agreeing with each other that "they or one or more of them will engage in conduct which constitutes such crime," i.e., stealing personal property from the occupants of Edwards' apartment through force if necessary while armed with actual firearms. *See* 18 Pa.C.S. § 903(a), (a)(1). The evidence was sufficient for the jury to infer that their agreement encompassed not only robbery but also second-degree murder, as the duo "knew or should have known that the possibility of death accompanied a dangerous undertaking," *see Commonwealth v. Lambert*, 795 A.2d 1010, 1022-23 (Pa. Super. 2002) (en banc), particularly as Wellman brought and used an operational firearm to commit the underlying crime.

Our decision in *Rivera* does not require reversal. In *Rivera*, four individuals formed a scheme to rob a victim through threat of force, arming themselves with a gun to do so. *Rivera*, 238 A.3d at 489-90. The group shot and killed the victim during a home invasion robbery. *Id.* Following a jury trial, the trial court sentenced Rivera to concurrent terms of incarceration: life without parole for second-degree murder, ten to twenty years for robbery, ten to twenty years for burglary, twenty to forty years for conspiracy to commit criminal homicide, and ten to twenty years for conspiracy to commit burglary. *Id.* at 490-91. The court also sentenced Rivera to a consecutive term of ten to twenty years' imprisonment for conspiracy to commit robbery. *Id.*

- 11 -

Rivera raised a number of arguments, none of which garnered him any relief.[5] The **Rivera** Court then considered sua sponte whether he was subject to an illegal sentence because the trial court sentenced him separately on three counts of conspiracy. **Id.** at 503. Section 903(c) provides that a person conspiring to commit multiple crimes "is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S. § 903(c). The Court concluded that section 903(c) prohibited convictions for multiple counts of conspiracy when all conspiracy counts pertained to one conspiracy derived from the "continuous conspiratorial relationship." **See Rivera**, 238 A.3d at 503-04. Concluding that Rivera received an illegal sentence, this Court vacated two of the three conspiracy convictions, leaving only the conspiracy to commit robbery intact. **Id.**

The **Rivera** Court selected robbery as the surviving conspiracy conviction based upon this Court's prior decision in **Barnes**, stating:

> The agreement among Appellant and his co-defendants to rob Victim at gunpoint encompassed their plan to break into Victim's home (burglary) and take his money and drugs at gunpoint (robbery). The homicide (second-degree murder) that occurred during the robbery was in furtherance of the single conspiratorial goal: to rob Victim. As such, under subsection 903(c), Appellant only could be found guilty of conspiracy to commit robbery, "that

---

[5] This Court acknowledged that whether one could conspire to commit second-degree murder was an unsettled question in this jurisdiction, but we left this question unresolved because Rivera did not raise the claim on appeal and the Court ultimately vacated his conviction on a different basis. **Rivera**, 238 A.3d at 490 n.4.

crime being the underlying foundation of the agreement upon which the conspiracy charges were based."

*Id.* at 504 (quoting *Barnes*, 871 A.2d at 821).

At first blush, this supports Wellman's contention that, at most, he could be convicted of conspiracy to commit robbery, not second-degree murder. Upon further research and consideration, however, we must conclude that the portion of the holding permitting conviction of conspiracy only for the crime that was the basis for the agreement is of dubious precedential value. Our Supreme Court expressly disapproved of this proposition when affirming our decision in *Barnes*:

> We emphasize, however, that our decision should not be read as an approval of the Superior Court's approach of selecting an overarching conspiratorial object to define the extant conspiracy conviction in the circumstances presented, since this approach appears to be in tension with the Legislature's directive that a conspiracy with multiple objects is to be of the same grade and degree as the *most* serious offense which is an object.

*Commonwealth v. Barnes*, 924 A.2d 1202, 1203 (Pa. 2007) (Opinion Per Curiam) (emphasis in original) (citing 18 Pa.C.S. § 905(a) ("Except as otherwise provided in this title, attempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy.")).

We therefore conclude that Wellman's first issue, while not frivolous, is not meritorious. No relief is due.

We turn now to the Commonwealth's request in its responsive brief that Wellman's conviction be vacated. *See* Commonwealth's Second Brief at 9.

Although the Commonwealth initially maintained that it sufficiently proved the elements of conspiracy, *see* Commonwealth's First Brief at 14-16, it now contends that Wellman's conviction must be vacated because conspiracy to commit second-degree murder is not a cognizable criminal offense, *see* Commonwealth's Second Brief at 9. Because "conspiracy is a specific intent crime" and second-degree murder "does not require the specific intent to kill," the Commonwealth asserts that a conspiracy to commit second-degree murder "would seem to require proof that a defendant intended to perpetrate an unintentional killing—which is logically impossible." *Id.* at 11-12. In support of this contention, the Commonwealth highlights this Court's prior holding that one cannot attempt to commit second-degree murder because attempt requires specific intent and murder of the second degree "occurs where the killing of the victim is the unintentional result of a criminal act." *Id.* (citing *Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa. Super. 2004)). Additionally, the Commonwealth directs our attention to cases from other jurisdictions that have not recognized the crime of conspiracy to commit second-degree murder. *Id.* (citing *Evanchyk v. Stewart*, 340 F.3d 933, 939–40 (9th Cir. 2003) (noting that under Arizona state law, proof that the defendant had no more than the requisite intent to aid, promote, or commit the underlying felony is insufficient to convict of conspiracy to commit first-degree murder, which requires the specific intent to kill) and *State v. Wilson*, 43 P.3d 851, 853-54 (Kan. Ct. App. 2002) (holding that Kansas does not

recognize the crime of conspiracy to commit felony murder because one cannot "intentionally conspire to commit a crime which only requires a mens rea of negligence or no mens rea at all")).

The Commonwealth's request to vacate Wellman's judgment of sentence for his conspiracy conviction differs from Wellman's argument. Essentially, the Commonwealth argues that the crime of conspiracy to commit second-degree murder does not exist as a matter of law, whereas Wellman argues that the Commonwealth's evidence was insufficient to prove that he committed the crime of conspiracy to commit second-degree murder because the evidence at trial demonstrated that he only conspired to commit robbery, not murder.[6] Nonetheless, this Court has classified a claim that a court sentenced a defendant for a crime that is not cognizable under Pennsylvania law as one that implicates the legality of the sentence. ***Commonwealth v. Conklin***, 275 A.3d 1087, 1093 (Pa. Super. 2022) (noting that a sentence for attempted third-degree murder, a crime that is not cognizable, is an illegal sentence). Because the nuances of properly classifying these types of claims

_____

[6] Wellman briefly alludes to the cognizability of the crime in his brief but does not develop his argument or address it as a separate claim. ***See*** Wellman's Brief at 13 (arguing that the finding of guilt for the charge of conspiracy to engage in murder in the second degree is "not recognized in our judicial system").

can be challenging,[7] and we may raise a legality of sentencing claim sua sponte, *see Commonwealth v. Hill*, 238 A.3d 399, 407 (Pa. 2020), we address the Commonwealth's argument.

The notion that conspiracy to commit second-degree murder is not a cognizable crime under Pennsylvania law has some support.[8] The theory is that second-degree murder is an unintentional killing that occurs during the commission of a felony; if the conspiracy included an agreement to kill during

---

[7] *See, e.g., Commonwealth v. Weimer*, 977 A.3d 1103, 1105-07 (Pa. 2009) (classifying a claim as a challenge to the sufficiency of the evidence to prove conspiracy to commit third-degree murder but ultimately concluding that the jury convicted the defendant of conspiracy to commit criminal homicide without specifying the degree); *id.* at 1106 (Greenspan, J., concurring) (opining that a claim concerning conspiracy to commit third-degree murder may have been better framed as an "inquiry into the comprehensiveness (or lack thereof) of the trial court's instruction on the conspiracy charge"); *id.* at 1107 (Todd, J., dissenting) (asserting that Weimer was subject to an illegal sentence because she was convicted of the non-cognizable offense of conspiracy to commit third-degree murder).

[8] *See, e.g., Weimer*, 977 A.3d at 1109 (Todd, J., dissenting) (opining that conspiracy to commit third-degree murder is a non-cognizable offense and discussing support for such position); *Fisher*, 80 A.3d at 1203 (Todd, J., dissenting) (same); Wayne R. LaFave, Criminal Law, § 12.2(c)(2), Intent to Achieve Objective, 2 Subst. Crim. L. § 12.2(c)(2) (3d ed.) (discussing conflicting authority regarding the issue of whether one can conspire to commit an offense criminalizing one's causing a death without specific intent); *see also Mitchell*, 135 A.3d at 1101 n.2 ("The Crimes Code does not expressly set forth that one can be found guilty of second-degree murder as a conspirator. Other jurisdictions have determined that one cannot conspire to commit felony murder. This Court has also repeatedly noted that one cannot attempt to commit felony murder because an attempt is a specific intent crime, as is conspiracy. We note, however, that our Supreme Court has concluded that one can conspire to commit third-degree murder, which does not require proof of a specific intent to kill.") (citations omitted).

the commission of the felony, then the co-conspirators would intend to kill, thereby taking the act into the realm of first-degree murder. A majority of our Supreme Court, however, has rejected this argument in the context of third-degree murder. Third-degree murder is a homicide that the Commonwealth must prove was committed with malice, but like second-degree murder, it need not prove or address the presence or absence of an intent to kill. *Fisher*, 80 A.3d at 1191 (citing *Commonwealth v. Meadows*, 787 A.2d 312, 317 (Pa. 2001)). According to the Supreme Court, third-degree murder is "an intentional act, characterized by malice, that results in death, intended or not." *Id.* While the "elements of third[-]degree murder absolutely include an intentional *act*," the Court reasoned, it need not be "an act defined by the statute as intentional murder. The act sufficient for third degree is still a purposeful one, committed with malice, which results in death—clearly, one can conspire to such an intentional act." *Id.* (emphasis in original).

The *Fisher* Court specifically rejected the notion that the "language of Pennsylvania's conspiracy statute focuses on the actor's intent to promote or facilitate the commission of a 'crime,'" thereby requiring the actor to intend to commit the underlying crime in order to be guilty of conspiracy for such crime. *Id.* at 1194-95. Rather, the Supreme Court held that the statutory language stating that "the defendant must have 'the intent of promoting or facilitating' a crime and must 'engage in conduct which constitutes such crime,'" means that "[o]ne does not conspire to commit a denominated offense; one conspires

to engage in certain conduct." *Id.* at 1195 (quoting 18 Pa.C.S. § 903(a), (a)(1)). Thus, according to *Fisher*, when entering a conspiracy to commit third-degree murder, the conspirator does not intend to commit or aid an unintentional murder; rather, the conspirator "intends to [commit or] aid a malicious act resulting in a killing." *Id.* at 1194.

Under Pennsylvania law, if co-conspirators specifically agree to kill the victim, their agreement as to the act and result indicates that they share the "deliberate premeditated shared specific intent to commit murder," and they are guilty of conspiracy to commit first-degree murder. *See Commonwealth v. Wayne*, 720 A.2d 456, 465 (Pa. 1998) (determining that the "precise and deliberate actions of appellant and the two unidentified men establish a concerted conscious decision by all three persons to join together with the purpose of taking the [victim's] life"). If co-conspirators agree to engage in malicious behavior, such as an agreement to beat the victim without limiting the extent, they have conspired to commit a malicious act and, if the victim should die as a result, they are guilty of conspiracy to commit third-degree murder. *See Fisher*, 80 A.3d at 1194-95. This Court has applied *Fisher*'s reasoning to validate convictions of conspiracy for the unintentional death of victims in cases that did not involve third-degree murder. *See, e.g., Commonwealth v. Arrington*, 247 A.3d 456, 462 (Pa. Super. 2021) (relying upon *Fisher* to conclude that the crime of conspiracy to commit involuntary manslaughter is cognizable in Pennsylvania; although the conspirators did not

intend to cause a death, they can intend with another "to intentionally commit an unlawful act characterized by the conscious disregard of a substantial and unjustifiable risk (i.e. a reckless act), that results in a death that was a natural and probable result of that act"); *Commonwealth v. Carr*, 227 A.3d 11, 17-18 (Pa. Super. 2020) (relying upon *Fisher* to conclude that the crime of conspiracy to commit drug delivery resulting in death is cognizable in Pennsylvania; the conspiring parties need not specifically anticipate the death of the user of the drug because the "conspiracy to commit the overt act of an intentional drug delivery links the conspirators to the foreseeable consequence that the drug user may die"); *but see Commonwealth v. McClelland*, 204 A.3d 436, 445 (Pa. Super. 2019) (relying upon the *Weimer* dissent and *Wayne*, without discussion of *Fisher*, to hold that the crime of conspiracy to commit homicide in general requires "proof of the specific intent to kill," rendering it "identical to the mens rea requirement for first[-]degree murder," and concluding that such crime is non-cognizable).

Second-degree murder, like third, requires a malicious act. For second-degree murder, the malicious act is the predicate felony during which the death occurs, whereas the malice for third-degree murder stems from the nature of the specific act that results in death. Like third-degree murder, section 2502(b) does not require the Commonwealth to prove or address the presence or absence of specific intent to kill, just the intent to engage in the malicious act that results in the victim's death. Thus, under *Fisher*'s

reasoning, a person may conspire with others to commit second-degree murder despite the lack of a particular intent to kill. Where the parties agree to commit a predicate felony with the "wanton disregard for the fact that death might result," their agreement encompasses second-degree murder as a risk "inherent in the commission of a dangerous felony." *Rivera*, 238 A.3d at 501 (quoting *Commonwealth v. Olds*, 469 A.2d 1072, 1076-77 (Pa. Super. 1983)). Therefore, pursuant to *Fisher*, the crime of conspiracy to commit second-degree murder is cognizable, and Wellman's sentence for this crime is not illegal.

Based upon the foregoing, we conclude that the Commonwealth introduced sufficient evidence to convict Wellman of conspiracy to commit second-degree homicide and that such a crime is cognizable pursuant to the Pennsylvania Supreme Court's analysis in *Fisher*. As such, we affirm Wellman's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/18/2025